Good morning, Your Honors. May it please the Court. My name is Michael Grimm. I am counsel for the petitioner Ricardo Fonseca. I'd like to reserve two minutes of my time, if I could, for rebuttal. The parties in this case agree on several of the issues. The respondent does not dispute that Ricardo is a member of a particular social group, homosexual men in Chile. The respondent doesn't dispute that it doesn't challenge Ricardo's credibility, and it doesn't dispute that the incidents of harm that Ricardo suffered indeed occurred on account of his membership in the particular social group, where the government in Ricardo part ways is on whether those specific incidents of harm and the other evidence in the record give rise to a well-founded fear of persecution in Ricardo. The immigration judge, in spite of finding that Ricardo gave credible, detailed, specific, and plausible testimony, he found that that wasn't enough to find that he had a well-founded fear of persecution, and he appears to have based that decision on two facts, one, that Ricardo made one return trip to Chile after having been in the United States, and secondly, the repeal of an anti-sodomy law that had existed in Chile at the time. Ricardo believes after closer examination, neither of those two facts constitute substantial evidence for the judge's finding that he doesn't have a well-founded fear of persecution. On the return trip, Ricardo had first traveled to the United States temporarily in April of 1997, spent about two months in the United States, and then returned to Chile for another two months, and again, returned to the United States in July of 1997 permanently. He testified that the reason he wanted to return was because he did have concerns about his permit to be in the United States, and he required his permit, his permission to be in the United States that first time expiring. He expressed concerns about that, but mostly he said that he wanted to go home to speak to his parents, and it was important to him to tell them, to come out to them as a gay person. He also said that he went back because he hadn't made up his mind. He didn't. Yes. And that he went back to make a final decision. He indicated that he was he wanted to think about it, but he also wanted to speak to his parents. And he also wanted to have some private conversations with some of his professors who, when he did come out to them, encouraged him that he should leave Chile. And comparing this trip, return trip, to the other cases where this Court has found that return trips didn't rebut a fear of persecution. For example, in the Boris Adano v. Gonzalez case, the applicant in that case had made various trips between the United States and Mexico over the period of a year to purchase goods in the United States to sell in Mexico to help facilitate his travel, permanent plans to the United States. And yet the Court found that those trips, those various return trips didn't negate his fear of persecution. So you haven't made a claim that this should be treated as a disfavored group, have you? Yes, Your Honor. Definitely. As the Avitova-Eliseva decision tells us, the Court should treat the record as if it speaks to the current situation. And the record right now shows that homosexuals are a disfavored group in Chile. Do you have to raise that before the BIA? We did argue the Avitova decision that his – that he showed that he would be singled out individually for persecution, which is Avitova's interpretation of that part of the law. Okay. Well, two questions. One, is it properly preserved, the disfavored group argument? And then we – I guess we could look at it for our present purposes either way. Does he prevail under a disfavored group theory or even under an ordinary theory? You're not arguing that it's a pattern and practice case. No, we're not arguing that it's a pattern of practice. So you're either arguing it as a disfavored group case or just as an ordinary well-founded fear of persecution case? I think we're arguing both, and I believe both of those were brought up into the brief to the BIA. Again, if Ricardo can show as – and in that line of cases of Avitova, the Seyel decision states that the person should have a personal connection to the general persecution of that group, and Ricardo definitely has that. He experienced numerous arrests and other mistreatment. What the respondent at least can see is harassment, and harassment was the term used by this Court in Avitova, that a pattern of practice of harassment directed specifically at the applicant is enough to show that that individual has a well-founded fear of persecution. What was the standard applied by the immigration judge in deciding that he had no grounds for asylum? The immigration judge used the – as far as the well-founded fear, the objective fear standard, which is whether a reasonable person in Ricardo's circumstances would have a well-founded fear of persecution. I thought he used the standard as to whether he would be persecuted, as opposed to the standard, a well-founded fear that he might be persecuted. If the Court did – if the immigration judge used the standard of would be, that would be an incorrect – it would be too high. Well, he did say that the question was whether he would be persecuted, not as Judge Nelson inquired. He did not say whether there was a reasonable possibility or in any way qualified that standard. He said he didn't prove that he would be persecuted or that there would be a reasonable – I mean, it was just what Judge Nelson said to you, that he didn't prove that he would be persecuted. And the reason I raise it is I think that's the incorrect standard, unless you agree with that standard. We don't agree with that standard, but we – You haven't argued that. In any case, this Court has authority to review whether – Right. Ricardo established whether the immigration judge's decision is upheld by substantial evidence. And the explanations in that – that little paragraph that he – that the immigration judge made about the well-founded fear indicates that any – he appears to have conceded a subjective fear, but any fear would be rebutted by this return trip and then the repeal of the salting law. Well, I'm – there was no – was there past – what was the past persecution? The – and there are – of course, the Petitioner as well argues that he did suffer past persecution, and the immigration judge found that he didn't. He did. Which is – he didn't, as a matter of law, as a legal matter. I don't think he – If he didn't, assuming he didn't suffer past persecution, then there's no – there's no presumption that he's going to – that he fears persecution in the future, right? That's correct, but it's not a – I'm sorry. There are two ways to qualify for asylum, to suffer past persecution or establish a well-founded fear. Right. Well, if he – why is it more likely that he's going to suffer in the future than it was in the past? Is there any evidence of that? Yeah. Again, and that's based on the Abitoba standard. In Abitoba, the Court found that it wasn't inconsistent to find that Ms. Abitoba didn't suffer past persecution, but as a matter of future fear, the specific incidents of harm or at least harassment she suffered, in addition to the fact that she's a part of a disfavored group, it's consistent to find that she does have a well-founded fear. Well, yeah, but what evidence here? Here, the – particularly the affidavit by Mr. Godoy, which is in the record at page – it's an expert affidavit at – sorry, page 408 of the administrative record. Mr. Godoy indicates that in spite of the repeal of that sodomy law, a far greater number of arrests and prosecutions for homosexuality are carried out under the Article 373, which punishes acts that offend morality and good customs. And he also indicated that it's used to arbitrarily detain gays in bars, clubs and parks. And he also noted that the arrests and raids are ongoing, they're widespread and they're widely documented. Okay. Thank you. You have about however many minutes. Yes, I have about a minute. Thank you, Your Honor. May it please the Court. My name is Ari Nazaroff and I'm from the U.S. Department of Justice and represent the Attorney General. Mr. Orojo has not done the one thing he must do to prevail. Point to one piece of evidence that compels reversal. One piece of evidence that a reasonable person would be compelled to conclude he was persecuted in Chile and that he has a fear of persecution were he to return. In fact, the record shows Mr. Orojo likes San Francisco. He has no subjective fear. He already went back to – he had come to San Francisco and he went back to Chile and he came out, he told all his relatives and friends and even the people at the He was a homosexual. And nothing happened to him. Then he decided that he would rather live in San Francisco. So he finished up his affairs and came to San Francisco. And nothing happened. They talk about a well-founded fear upon return, but he has already returned and nothing happened. He wasn't arrested, he wasn't detained, he wasn't beaten. Let me ask you about the standard applied by the immigration judge, that he would be persecuted as opposed to a well-founded fear of persecution. Well, Your Honor, first of all, that was not raised at any point, the issue with the standard. The I.J. looks at the evidence de novo. He looks at all the evidence submitted. And if an alien is not shown past persecution, he doesn't – he doesn't get that presumption to rebut that. No, I understand that. But he appeared to be applying a different standard, whether or not it was argued. Yeah. It's not before this Court, Your Honor. It's not before this Court. Petitioner never raised it at any point in any of the briefing. Well, the point is that what – the question is whether or not there would be any evidence that would indicate that if he – if he used the wrong words, the question is whether or not there was any evidence that he should have considered that would show some likelihood in the future, if there wasn't any in the past. Well, Your Honor, they have not. What? They have not. They have to point to one piece of evidence that would compel reversal, and they have not done that. Well, they pointed to an affidavit in the record that shows that things are still Well, Your Honor, that does not compel reversal because the record also has – it also has the fact that the law was repealed in 1998. And most importantly, Your Honor, Mr. Rojo has sought government help while he was in Chile, even before he came to San Francisco. When he was – he was locked out of his apartment building, he went to the police station and stayed there in the waiting room overnight. Nobody arrested him, beat him up. He – in the record, he indicates that the best help he got when he was trying to get some counseling was at the State 1 psychiatric facility, the San Diego Psychiatric Hospital. He describes the treatment there as good to me, and the State psychologist he saw for a year helped me a lot. That's on page 160 of the record, Your Honor. So the evidence in this case is just overwhelming, Your Honor, that he were to return. In addition, they – they submit – the State Department report makes no mention at all of persecution against – against homosexuals. And the evidence they submitted, articles, indicate that the gay and lesbian groups are very strong. They openly criticize the police. They – if they don't feel an investigation is going as fast as it should. And so there's no well-founded fear. There's no – Is your point that whatever problems there are or the fear in the future, there may be for homosexuals because – because there – there may well be that – that it's not government persecution? That's correct, Your Honor. There's no government actor in this case. And maybe Chileans – What about the multiple detentions of – by the police officers where they recorded his personal information? Does this indicate that they were signaling him out and that would put him at individualized risk as opposed to general risk? Well, no, Your Honor. I think you're referring to the two arrests in 1995 at the clubs where – where he was at the time the police came in. It's unclear why the police came there. And they never injured him. They never seriously injured him. They took down his information, then he was released. He was never charged. The other times in September – I thought they did injure him. Not seriously. Not seriously. There's a difference between not seriously and being – Well, they pushed him against the wall. That's not – that's not persecution. Somebody hit him. Some police officer hit him in the back, as I read the record. I believe – well, again, Your Honor, this Court has held that, you know, being arrested, kicked, and detained, even for six hours, is not past persecution. That's per Assad v. INS, 47. Well, let's assume it's not past persecution. But to me, it would be relevant to whether or not he has a well-founded fear of persecution, would it not? Well, in light of the record, I – all the evidence is relevant. But in light of the record, I would say that the – that the real – Is there evidence of government persecution of homosexuals? Absolutely not. No, Your Honor. Of anyone? There's – you say there's not? When you – when they arrest somebody, call them a faggot and say, you look like a faggot, and they then ask if you want to perform oral sex on me and stick this baton – stick this baton up your ass, that's the kind of government treatment you're defending? Well, those are – I'm not defending government treatment, Your Honor. What I'm saying is that – I thought you were telling Judge Schroeder that the government was a wonderful group and that he went to them because they were his best friends. Well, he did go – he did go. And then when he went to them, they said, you look like a faggot, and we're going to stick this baton up your ass. Well, that's harassment and discrimination, which doesn't rise to persecution. And even the heavy-handed police tactics don't – such as that don't rise to persecution. But, Your Honor, he went to the police station when he was locked out and stayed at the police station overnight. He was not arrested, detained, or beaten. He went to a State facility and sought help and got good help. That's where they – that's where they told him he looked like a faggot and that they'd stick a baton up his ass, and that he threatened to put him in jail. Well, we're not saying that's – He went to them for assistance. Well, again, Your Honor, but he went to the police station, stayed there overnight, and sought help from – there's no government actor. I mean, there's some heavy-handed police tactics made, but that's not persecution. Well, police are government actors. So there is a government actor. You may not think it rises to the level of persecution, that it's only harassment. And this Court has held that harassment and discrimination does not rise to persecution. Okay. Well, we're not discussing whether there's a well-founded fear of persecution. Well, Your Honor, don't lose track of the record. He went back already. He says, I can't go back, I'll be persecuted. He already did that. And nothing happened. He came out and he told all his friends and relatives, including his employer, and he wasn't arrested, he wasn't detained, he wasn't beaten with a baton. For the reasons we've stated in our brief in here this morning, we urge this Court to deny the petition for review. Thank you. Thank you. I won't go – Judge Reinhart made it clear what happened to Ricardo when he attempted to seek protection from the police. And Ricardo later testified at his hearing that after he had been attacked by private parties on a campus, a homophobic attack, he was asked why he didn't go to the police. And on page 269 of the record, he indicated why. He says, I was afraid because of what happened in the past, they would just tease me. So he is clearly unwilling to avail himself of the protection of Chile. Well, are you arguing that you're – are you arguing that there – that the evidence compels a finding that there was past persecution? Yes, Your Honor. But what Ricardo wants this Court to do is to find that he did suffer past persecution, but also independently that he has a well-founded fear of persecution because he doesn't want the case to be remanded for the government to rebut that presumption because a well-founded fear of persecution can be – an independent finding can be made by this Court absent any presumption. And just briefly on the return trips, again, in Borsodano and Caroni v. Gonzalez, both those individuals made return trips. Neither of them were harmed on their return trips. Mr. Caroni went back for family reasons. Again, Mr. Borsodano went back for back-and-forth financial reasons. And this Court found that those return trips did not rebut any well-founded fear. And, again, Ricardo did not – I'll end with this. Ricardo did not go back to tell everybody that he was gay. He wanted to come out in a private conversation to his parents and with some of his professors. It wasn't as if it was some kind of press conference. It was a very private matter that he wanted to deal with. All right. I have one final question. I know you would like us to make a finding that he had a well-founded fear. If not, are you asking that it be remanded because they applied the incorrect standard in determining whether there was a well-founded fear? If the Court finds that there was no past persecution and, therefore, no presumption or a well-founded fear independently of any presumption, then? And then what? If the Court finds that the standard that used was too high, then definitely we would ask the Court to remand for the agency to use the correct standard. And, again, the evidence that he's likely to suffer more persecution or that he's more likely to suffer persecution than he was in the past is this affidavit? The affidavit, the articles he submitted from the organization and his own history of individualized harm. All right. Thank you. Thank you. The case just argued is submitted for decision. We'll hear the next case, which is, well, the Environmental Defense Fund has been removed from the calendar and dismissed. So the next case is City of Las Vegas v. the FAA.
judges: Schroeder, Nelson, Reinhardt